Arturo E. Matthews, Jr., Esq.
SBN 145232
2512 Chambers Rd.
Suite 105
Tustin, CA 92780
Telephone:  714-647-7110
Facsimile:  714-647-5558
aem@matthewsfirm.net

Attorney for Plaintiff, Ruthann Lopez

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| Ruthann Lopez,<br><br>    Plaintiff,<br><br>v.<br><br>Arcadia Recovery Bureau, LLC,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## PARTIES

1. Plaintiff, Ruthann Lopez ("Ruthann"), is a natural person who resided in Fremont, California, at all times relevant to this action.

2. Defendant, Arcadia Recovery Bureau, LLC ("ARB"), is a Pennsylvania limited liability company that maintained its principal place of business in Reading, Pennsylvania, at all times relevant to this action.

Complaint - 1

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

5. Before ARB began contacting Ruthann, it and Ruthann had no prior business relationship and Ruthann had never provided express consent to ARB to be contacted on her cellular telephone.

6. ARB regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of ARB's revenue is debt collection.

8. ARB is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, ARB contacted Ruthann to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Ruthann is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. Within the past twelve months, and before, ARB has been calling Ruthann on her cellular phone ending in -9153 in connection with the collection of a debt.

13. During the initial conversation, ARB refused to provide its identity and the purpose of ARB's call unless Ruthann provided her social security number, address and date of birth.

14. During this communication, Ruthann refused to provide the requested information without knowing the identity of the caller and the purpose of the call.

15. Thereafter, despite this communication, ARB continued to request Ruthann's personal information; on each occasion, Ruthann refused.

16. Subsequently, around the end of the summer of 2015, Ruthann communicated her desire that ARB cease calling her.

17. Despite this communication, ARB continued to call Ruthann on her cellular phone in connection with the collection of a debt.

18. On more than one occasion, ARB called Ruthann multiple times a week.

19. On at least one occasion, Ruthann's partner ("Partner") telephoned ARB for the purpose of obtaining information about ARB's calls.

20. During this communication, without verifying Partner's identity, ARB disclosed the existence of the debt to Partner.

21. Partner inquired as to why ARB disclosed Ruthann's information to Partner. In response, ARB said something substantially similar to, "We are not at liberty to say how we got her information" and then ARB hung up.

22. Subsequently, Ruthann telephoned ARB who advised Ruthann the debt was for an ambulance bill.

23. During this communication, Ruthann advised ARB the debt had been paid. In response, ARB representative confirmed the debt was paid. The ARB representative told Ruthann she would be transferred to a supervisor; however, the call was disconnected.

24. Despite this communication, ARB continued to call Ruthann on her cellular phone in connection with the collection of a debt.

25. On at least one occasion, within the past twelve months, ARB left a voice message on Ruthann's cellular phone. This voice message identified the caller as ARB, disclosed the

existence of the debt and left a call back number. Partner was in the room and heard the message.

26. ARB's collection efforts, including but not limited to its telephone calls, caused Ruthann emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

27. ARB's collection efforts also intruded upon Ruthann's privacy.

28. In addition, each time ARB placed a telephone call to Ruthann, ARB occupied Ruthann's telephone number such that Ruthann was unable to receive other phone calls at that telephone number while ARB was calling her.

29. ARB's telephone calls also forced Ruthann to lose time by having to tend to ARB's unwanted calls.

## COUNT ONE

**Violation of the Fair Debt Collection Practices Act**

30. Ruthann re-alleges and incorporates by reference Paragraphs 5 through 29 above as if fully set forth herein.

31. ARB violated 15 U.S.C. §1692c(b) by communicating with a third party in connection with the collection of the debt without Ruthann's consent.

## COUNT TWO

**Violation of the Fair Debt Collection Practices Act**

32. Ruthann re-alleges and incorporates by reference Paragraphs 5 through 29 above as if fully set forth herein.

33. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774

(7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

34. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

35. The likely effect of ARB's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Ruthann.

36. ARB violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ruthann in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

37. Ruthann re-alleges and incorporates by reference Paragraphs 5 through 29 above as if fully set forth herein.

38. ARB violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

39. Ruthann re-alleges and incorporates by reference Paragraphs 5 through 29 above as if fully set forth herein.

40. ARB violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FIVE

**Violation of the Telephone Consumer Protection Act**

41. Ruthann re-alleges and incorporates by reference Paragraphs 5 through 29 above as if fully set forth herein.

42. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

43. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

44. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

45. A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see*

*also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

46. ARB used a telephone dialing system with predictive dialer functionality to place calls to Ruthann on her cellular telephone.

47. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

48. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

49. Ruthann was the "called party" in each telephone call ARB placed to Ruthann's cellular telephone.

50. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

51. ARB violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Ruthann on her cellular telephone without Ruthann's prior express consent or after such consent had been revoked.

52. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

53. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

54. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

55. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA.  See *Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

56. ARB voluntarily placed telephone calls to Ruthann's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

57. ARB's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## JURY DEMAND

58. Ruthann demands a trial by jury.

## PRAYER FOR RELIEF

59. Ruthann prays for the following relief:

    a. Judgment against ARB for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. An order enjoining ARB from placing further telephone calls to Ruthann's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

    c. Judgment against ARB for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call ARB made in violation of the TCPA.

    d. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: August 17, 2017            By: /s/ Arturo E. Matthews, Jr.
                                     Arturo E. Matthews, Jr.